All rise. Please be seated. All right, let's pick up our next case. Blomenkamp v. Burroughs v. Village of Freeburg. All right, please proceed. Please be seated. Okay, please, the court. I'm Lee Berry. I represent the plaintiffs in this cause. However, it should be noted, as I'm sure your record reflects, when this appeal was commenced, John Blomenkamp and Steve Burroughs were addressing the court presiding therein. A motion to dismiss Blomenkamp is filed because there has been a resolution of his case. So I'm standing before you now on behalf of Steve Burroughs. Issues are the same. This is a difficult case. I recognize that. I recognize coming up here that a great deal of latitude is given to the trial court in considering the review of arbitration decisions. In this case, however, Judge McGlynn, whom I've known, as long as I've known some of you folks, will offer a problem, has made a decision that standing did not exist as to Stephen Burroughs. And the reason he gave was reliance upon the Stalagant, I always mispronounce that, Justice Harrison's decision in 1998 in Stalagant. The allegations of the amended complaint differing from Stalagant, where Justice Harrison noted that there was no discussion by the plaintiff in that case as to, or no pleading in that case, that he had not received adequate support from the union. In this case, an amended complaint was allowed, filed, and we're before you on the motion to dismiss that amended complaint that was granted by the trial court. In the amended complaint, allegations were included to which were attached exhibits reflecting the withdrawal or the refusal, wasn't even the withdrawal, the refusal of the attorney representing the bargaining agent to participate. The record of the arbitration reflects, on the opening day, entries of appearance of which it was clear from the commencement that I, William Berry, my firm, represented the individual employee. If you examine the record present to you, you will see that all of the captions, every representation during the course of the arbitration, is in the name of the two individual applicants at that time, grievance at that time. We progressed through a multi-day, a three-day arbitration, and then a subsequent day in which an evidence deposition was conducted, a half-day, that was to make part of the record, with the style of the case constantly being reflected as the two individual grievance, the plaintiff in this case. From the commencement of the arbitration, there was never an involvement of the bargaining agent, with one exception, which I acknowledge. Exhibits 1 and 2, Joint Exhibits 1 and 2, that are part of the record of the arbitration, and that was provided with this, was the individual grievances filed by Shane Boyles as the staff attorney for the union, for the bargaining agent, and then no participation thereafter. The entry of appearance by this office, by my office, was on behalf of the individual grievance. So my first point, and I'm trying to, I'm simplifying this a great deal, that from the commencement of the arbitration, it was known that the bargaining agent was not participating, neither by attorney or by any entry of appearance. We proceeded through the arbitration, the decision was made, and when the suit was filed to, for the review of the arbitration, it was in the name of the parties that had been the, that had been documented as the parties to the arbitration. The first issue raised by the city, and by the way, just to digress, in the effort to always be sure that you have all the named parties, when we file arbitrations, we name the members of the board. There is the argument by the, by the city, by the village, rather, that the named parties really need not be parties, that the grievance and the village of Freeburg are the parties at issue here, and I tend to agree. This deals with the grievances filed by the two individuals now, Stephen Burroughs, the remaining party, and the village, who was their employee. And, in fact, during the entire course of the arbitration, those were the parties. My first point, and again, I've acknowledged that I'm dealing with the case authority that does not specifically address it, except for the one case I did cite in which, I think it was Tazewell County case, in which the trial court upheld a decision by the arbitrator to deny a motion to dismiss at the arbitration level, asserting that it was untimely filed. They were getting ready to proceed to trial, and they should proceed to trial, or proceed to arbitration. So, now, counsel, my opponent, in his brief, or in the Applee brief, asserts that the action by the arbitrator, or my assertion that the arbitrator had the authority to consider standing at the commencement of the arbitration, is without merit, because that was not part of the collective bargaining agreement. But I think the citations that I provide suggest that latitude is given to the courts to allow that. There is still the obligation on the parties to raise these legal issues that may, if granted, may have considered it favorably, would result in the termination of the entire process. In this case, I argue that the time for addressing the issue of standing, with the time for stating the wrong parties are here as good parties, the time to state you should have your bargaining agent, the union here, as opposed to the individual grievance, was at the commencement of the arbitration. Counsel, which reminds me, on page, as far as the timeliness of addressing the standing issue, you cited that McCreel v. Billings in Portland Park, which is a Rule 23, and you're not allowed to cite that. So on our motion, if you want to withdraw, we're going to disregard that and also disregard the appellee's response containing your brief. It is properly raised, and it may be the example of an older lawyer not recognizing the new citations. That should not be, I acknowledge that, that should not be considered. And I advance no argument in that regard. It was properly raised and challenged by the appellee. But it doesn't change the issue that I'm addressing here. Now, the second issue is, was there evidence pleading in the complaint, in the amended complaint, that would give a basis for which Judge McGlynn could determine that there was at least the opportunity, should have the opportunity to present evidence of argument, that the union did not provide the right kind of representation. Now, I'm using the term union, the bargaining agent, PDLC. In the Supreme Court decision in 1998, it was noted that the entire proceedings from arbitration on were conducted by the bargaining agent against the employer. When the individual employee, the grievance, filed the motion or filed the complaint for review of the arbitrator's decision, he pleaded nothing that would give the court, the trial court, a basis for stating that he did not have representation. In his opinion, or in his order, Judge McGlynn said that I find from a review of the record that there was no basis that they had proper representation. I mean, that's his finding. So the second aspect that I present to the court, and again in an effort to really, truly simplify the argument here, is that there was evidence of that, simply the fact that there was no participation as documented by the correspondence. My opponent, in his appellee brief, articulates the argument that can't be ignored, I understand that, that the Illinois Labor Relations Board has sold jurisdiction over this issue. And he notes, as the record reflects, that a complaint was filed by the grievance in the ILRB asserting a claim for fees and expenses against it. That was the sole issue raised, and that was dismissed as claiming it was not timely filed because it should have been filed at the time notice was served. The biggest difficulty I acknowledge, if I'm unpersuasive, or if my arguments are unpersuasive as to the fact that the entire issue of way of standing was weighed, is that decision. Because there is a decision cited by the appellee in which the court says whatever the ILRB says is dispositive on the issue, regardless of the reason. That is, I think, distinguishable from the Casanova case I'm referring to. I think this case is distinguishable. I don't think that that should be the binding decision for two reasons. One, the claims in the ILRB are, particularly in this case and in most cases, are for assertion of some kind of damage or relief. Relief in some form of damages. In this case, the claim was filed by the grievance at that time, both of them, seeking recovery of the cost that they had expended personally to pursue the arbitration. That was dismissed as stating untimely. The argument was that it was timely because the damages were not fixed until the end of the grievance period or the end of the arbitration. It was filed within that time. That was rejected. But that is not the issue that Judge McGlynn was considering, and that is whether or not, by abandoning this arbitration proceeding, that the PVLC, that the bargaining agent, abandoned its members. Mr. Berry, you said early on that at some point the agent representative refused to participate, and is that in the record? That is attached as exhibits C and D, being C and D of the amended complaint, the letters to me. Again, anticipating the argument by my opponent, he says, hold it, that was not made a matter of record in the arbitration. And it was not. I entered my appearance solely on behalf of the individual grievance. And so at the time you entered your appearance, they were still represented? At the time I entered my appearance, the union still had counsel there, and then he wrote the letters that are attached as C and D. So you dispute that those letters were written in response to the fact that you entered your appearance? No, they very clearly say they are in response. I'm sorry. Okay. Yeah, they very clearly are letters to me stating I will no longer participate, the bargaining agent will no longer participate because I will not be called counsel. Okay, thank you. And that's what I'm saying, the distinction is, at all times, when entering the appearance, it was on behalf of the individual grievance, which makes this a distinct, an unusual case from the other case that we cited here. Simply, the bargaining agent said, I'll no longer participate, I don't want to share the arguments, I don't want to share the representative, I don't want to share the floor with an individual attorney that's been retained. Now I try to offer some distinctions in the international, the IBEW case that was decided by the Supreme Court in 2003. I apologize, versus the Department of Employment Security. In that case, the Illinois Supreme Court was considering the doctrine of association representation, standing. Because the issue was whether or not, in that particular case, whether or not the arbitration decision that governed the rights of individual employees or union members to recover benefits during a strike was there, employment benefits, whether or not that was the point. Are you talking about the Casanova case? No, I'm talking about international, the IBEW, International Union of Operating Engineers versus Illinois Department of Employment Security.  215 Illinois decisions. The, in that case, I cite that because it does, it is a later case, it's after Stalin, it's in 2005, where the Supreme Court recognized one factor, and that is that the association with the bargaining agent is the representative of the individuals and the individual members have a right to be heard. Now, I'm kind of reversing the argument, I acknowledge it, that in that case, the Supreme Court stated that based upon that argument, that the union could stand in and present the argument for the individual employees, and it wasn't bound by the standards that may have been adopted before. Even in some cases, these individual employees may have different claims, different amounts. But in the dicta of that language, which I cite in my brief, it is the Supreme Court notes that distinction, or that important element of representation by a bargaining agent, and that is that the bargaining agent is there on behalf of the individual claims. And it suggests in that decision that there's a right of those individual members to assert claims on their own behalf and not just through the bargaining agent. So, summarizing, it is my position that from the commencement of the arbitration, that was the time and the place for the presentation of any argument or any objection to the individual grievance participating. And again, if you look at the style of the case, you will see there's no reference to the bargaining agent. It is always the individual claimant, Blumenkamp and Burrow, versus the villain. The argument that the arbitrator could take no action on that part, because that was not contractually one of the issues that was delegated to the arbitrator through the contract, lacks merit. And I cite, again, the Tadpole case that simply says that there is latitude given once the parties begin to participate. And then to file the objection after the review, I believe that the standing issue, once we commence review of the arbitration, lacks legal credibility simply because it has been weighed. Can I give you a case that's on point for that? Not exactly. I'm asking for, well, not exactly, no. I mean, we're talking about a different issue, a precedent that is not contested by any other jurisdiction. If that argument, I think, is the prevailing argument, and thus there need be no consideration of whether or not Judge McLinn properly considered the issue of fair representation in his decision, because if it's weighed, it's weighed. Finally, if that is not accepted, and Judge McLinn does have the right to consider it, the argument that it is solely within the jurisdiction of the ILRB fails in this case again, because I believe that is a, that administrative body is there to consider issues between the employees and the union. In this case, the dismissal of that claim, because it was not timely filed, does not address the issue that was before Judge McLinn. And Judge McLinn, I think, believed, I guess I'm challenging his decision, he believed that there wasn't evidence, because he says that in his decision, I don't think there's sufficient evidence to find a failure to provide adequate representation. He cites that, which means he didn't look at the record, and I've known it for years, I know he looked at the record. I'm challenging his decision in that regard, but I think the prevailing, the primary issue in this case is whether or not it even need be considered, because it was weighed. Thank you. Thank you, Counsel. Argument for the affiliate. May it please the court. My name is Brian Mannion, I represent the village of Freeburg, and the numerous individually named officials appointed and elected at Freeburg that are also named as defendants. The first issue raised on appeal is concerning the failure of the trial court to rule that the affirmative defensive standing was not timely raised. The first issue that needs to be looked at in addressing this is what is the proper standard of review. It's the defendant's contention that this ruling should be reviewed for an abuse of discretion. And there's no case law that's been cited by the plaintiff suggesting that under these circumstances, it is an abuse of discretion for the trial court to have not disallowed the affirmative defense. There's several reasons why the affirmative defense was timely raised. First and foremost, there was no notice whatsoever to the village and the defendants that the union had had this divorce or split with the plaintiff. The amended complaint contained a letter, two letters attached were between Mr. Berry and the union that the village and the other defendants were not privy to. Arbitration is very informal. Mr. Berry's letter states that he was entering his appearance, but I don't believe there's anything in the record whatsoever, a document entering his appearance into the arbitration. The first documents in the record of the arbitration are what was given to the arbitrator when we showed up the morning of the arbitration. At that point, the grievance showed up with Mr. Berry, an associate of Mr. Berry, and then another attorney who didn't identify who they were there on behalf of named Ann Hillier. So at that point at the commencement of the arbitration, nothing had been communicated to the village or the defendants that the union withdrew the grievance, that the union didn't authorize Mr. Berry to proceed on the grievance, nothing whatsoever of that nature. This is almost akin to, my assumption was that Mr. Berry was there as co-counsel. I'm sure this has happened before the court many times that you get a brief that has perhaps two law firms or two different attorneys on the brief that are representing a party. Just because one may show up to a hearing and argue the case doesn't mean that the attorney who doesn't show up has withdrawn or abandoned the client or the claim. Mr. Berry argues to some extent that the rules of civil procedure should be applied and that a motion to dismiss for lack of standing should have been filed in the arbitration. First and foremost, the agreement to arbitrate is what controls and it doesn't say that the rules of civil procedure apply. But if for argument's sake they were applied, then there's also rules in the civil procedure that an attorney has to file a motion and obtain leave to withdraw and can't just abandon a claim. There was no motion filed by the union's attorney to withdraw and leave wasn't obtained by the arbitrator. There was no motion to substitute counsel or an order obtained by the arbitrator approving the substitution of Mr. Berry as counsel on the grievance in lieu of Mr. Boyles, who was the union's attorney. The first thing in the record that definitively notified the defendants that there was this division between the union and the plaintiff was after the arbitration when the complaint in circuit court was served on the village that indicated the union was a defendant adverse to the plaintiffs. And promptly within 30 days in the initial pleading, the defendants raised their standing issue. What about these letters that were sent? The letters were not even brought to the attention of the village for months after the lawsuit was commenced until they were attached to the amended complaint. So those weren't copied to anyone at the village. During the entire arbitration proceeding, no one at the village had any knowledge of those existence or the substance of that communication. During arbitration, we had no idea who was paying Mr. Berry's bill, whether the union had retained him to, in fact, represent the grievance, whether there was some assignment of the union's contractual right to the grievance to the plaintiffs, to Mr. Berry. All of that was unknown. And frankly, if we would have objected to Mr. Berry, I'm sure the defendants would have been subjected to an unfair labor practice charge of some sort that we weren't, that we were violating the contract by not proceeding with arbitration. So the village and the defendants adamantly dispute that it was obvious and apparent when we showed up at arbitration that the union had somehow pulled out and wasn't participating and wasn't consenting to Mr. Berry handling the grievance. There was no withdrawal of the grievance. Nothing communicated whatsoever from the union to the village. That being said, this argument on the standing issue that it wasn't timely raised also has to fail as to these individual defendants. They weren't even a party to the arbitration, so they absolutely couldn't have raised standing as an issue at arbitration since they weren't even a party until the lawsuit was filed. Again, and finally another issue, the plaintiff objected to the factual basis that was alleged initially in the affirmative defense that it didn't allege sufficient facts to notify them why there wasn't standing. However, the plaintiff did not file a motion to strike the affirmative defense and did not file interrogatories asking for the factual basis. Nothing happened with that affirmative defense until cross motions for summary judgment were filed many months, six months or so into the litigation. And then at that point, the plaintiff requested it and obtained leave to file an amended complaint, and those initial pleadings were abandoned. And once the amended complaint was filed, the defendants filed their motion to dismiss, raising the standing issue again. So based upon all of that, it's the defendant's contention that it was not an abuse of discretion for the trial court to refuse to rule that the standing affirmative defense wasn't timely raised. The next issue is then, was there standing or wasn't there standing based upon this alleged breach of duty of fair representation? Breach of duty of fair representation under the statutes is an unfair labor practice charge, which is within the exclusive jurisdiction of the Illinois Labor Relations Board. And that's well settled. There are several cases that have been cited that there is not concurrent jurisdiction between the Illinois Labor Relations Board and the trial courts to rule upon these matters. The Stahulok case, the Illinois Supreme Court case, basically said in terms of arbitration in unions, the only parties to the agreement to arbitrate are the union and the employer. And that those are the only parties that can then challenge an arbitration award to the trial court. And there's only one narrowly drawn exception, which is when the agreement can establish there's a breach of duty of fair representation. The Casanova case is the most instructive case on how that plays out in a trial court. In Casanova, a complaint was filed by the agreement to challenge an arbitration award, and initially the case was stayed because the agreement filed also an unfair labor practice charge with the Illinois Labor Relations Board. The trial court stayed the proceeding and the unfair labor practice charge played out through the Labor Relations Board and up to the appellate court, and that came back against the grievant employee and in favor of the union. So, again, that's consistent with the trial court in that case shouldn't wade into trying to rule upon whether or not there was a breach of duty on the part of the union. That's something that's within the exclusive jurisdiction of the Labor Relations Board. I can't imagine how the trial court and how that would even play out because if the defendant had to somehow litigate, they'd be essentially having to defend how the union represented an adverse party. And I would think that it would be virtually impossible to do that because all the communication between the union and the employee would be privileged. There would be no incentive for the union to cooperate in that litigation or that proceeding before the trial court if they weren't a party. It would invite collusion between the union and the employee. You know, an agreement that I will proceed against you and the Labor Relations Board if you'll cooperate with me and we'll just team up on the employer. So it just would not be workable to have that be an option as the plaintiff is advocating here. The operating engineer's case cited by the plaintiff is a completely factually different scenario. In that case, the employees were proceeding in the Illinois Department of Employment Security trying to file for unemployment following a lockout in a labor dispute. The Illinois Department of Employment Security denied the unemployment claims and then through the appeal process, the denial came over to the circuit court on administrative review. That's a different procedural path than through the Labor Relations Board, which comes directly to the appellate court on review. And in that case, the union wanted to intervene on behalf of the employees in that matter. And the issue is whether the union had standing, the employees in that case had standing to bring their own unemployment claims. It's completely distinguishable from here where the employees don't have the option to pursue a grievance directly to arbitration because they're not a party to the agreement to arbitrate. Plaintiff's counsel referenced the Taswell case. Taswell was fact specific. Taswell said that the motion to dismiss the arbitration because of a statute of limitations or time constraint was within the authority given to the arbitrator in the agreement to arbitrate. Didn't reference what language they were relying upon, but it requires an inquiry. What's the agreement to arbitrate say? In this case, the agreement to arbitrate in the collective bargaining agreement has very tight limiting language as to the authority of the arbitrator. The arbitrator is limited to ruling upon the step one, the issues put in step one of the grievance, and it specifically says, and nothing else. So this issue of whether they're standing is outside of the authority granted to the arbitrator by the clear language of this collective bargaining agreement. Finally, these issues with the unfair labor practice and standing aside as an alternative grounds for affirming the trial court. The burden to reverse or modify a arbitration award is extremely deferential and extremely high hurdle. Basically, an arbitration award can only be vacated or reversed if there is a gross error of law or fact on the face of the award. The courts won't wade into the record to determine whether the arbitrator made a mistake. And on the motion to dismiss and on the hearing before the trial court, the defendants allege that the arbitration award on its face doesn't include any gross error of law or fact. And for that reason, the case should be dismissed just based upon the arbitration award alone. So given all this other material, these arguments that are specifically raised by the plaintiff, even taking all of those, the dismissal is still appropriate because there is no error of law or fact on the face of the award. Thank you. Thank you, counsel. Rebuttal argument? I agree. I recognize that I approached this court asking for or advocating a position that I think is unprecedented because it's a specific issue I could find no case that directs it before. The argument made by the village, and again, I agree, it's the village that reversed it. We carefully add all of the, we add the board members when we file the administrative review cases, but it's the village. The position raised by the village is that, or suggested an argument today is my appearance at the commencement of the arbitration was holy cow, how did he get here? That's not so. The record will reflect all of the preliminaries that occur in selecting an arbitrator, striking names, getting down to arbitrator filers decision. The fact of the matter is at no time did the bargaining agent, Shane Boyles as his attorney, ever participate, ever participate in any of the selection of the arbitrator and in the action. And in fact, the style of the case and the presentation of the case and the record presented was not that this was a case by the bargaining agent, but rather by the individual grievance. Now, I acknowledge, and I set that up here, the letters from Shane Boyles to my office were not a matter, they were not produced on, or didn't, to be honest with you, didn't even think of it. He said, I'm not going to participate, and we continued to participate. And the argument that is made by the village, and frequently in these cases, is by accepting arbitration, we accept this rather loose and less definitive litigation structure as to procedure and evidence. And that, unfortunately, if that is the position taking, these things are allowed to occur, but the Taswell case said that that's not so. Yes, it did allow the latitude of the arbitrator to make a procedural and a legal question that was outside the issue of whether or not the employer was right or wrong in the fact. Counsel, do you agree that wasn't raised in the grievance, was it? I mean, how would the arbitrator know that we want to make a sustained determination? Well, we interviewed the parents. Clearly, I was interviewing my parents for the individual grievance. But if the issue is that the only party that can proceed is the bargaining agent, and the bargaining agent is not a party and everybody proceeds through, I understand your question. I know what you're asking, and that is probably the problem with the theory that we'll take these and administrate these arbitrations so loosely. But there was no deception, there was no challenge, there was no change of attorney or substitution of attorney, because I am, in my appearance, on behalf of the grievance and the union, just simply refused to participate after that, documenting in the letters that I don't want to be co-counsel. Thank you, counsel. We'll take this case under advisement and issue a ruling in due course.